IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-00878-SKC-KAS

MERCHANTS BONDING COMPANY,

     Plaintiff,

v.

MICHAEL HOLDEN,

     Defendant.

---

**ORDER RE: MOTION TO DISMISS COUNTERCLAIMS
PURSUANT TO FED. R. CIV. P. 12(B)(6) (DKT. 18)**

---

Suretyship is a tripartite relationship in which the surety guarantees and assumes joint and several liability for the performance of another (the principal) to a third party (the obligee). *Suretyship: A tripartite relationship*, 5 Bruner & O'Connor Construction Law § 12:2. In the construction context, as here, the surety's obligation is "co-extensive with that of the [principal/contractor] under the bonded contract and is conditioned upon and triggered by the bonded [principal/contractor's] material default of its performance." *Id*. It is under these circumstances that the present case arises.

In March 2020, Counter Claimant Michael Holden became a consultant and investor for non-party Monarch Partners, Inc. d/b/a Skyline Contractors ("Monarch")

Dkt. 9, ¶7.[1] As part of his agreement to assist Monarch, Holden agreed to become an additional indemnitor on a commercial construction bond agreement with Counter Defendant Merchants Bonding Company ("MBC"). *Id.* at ¶9.

However, between August and September 2020, Holden terminated all association with Monarch. *Id.* at ¶13. Although Holden requested that he be removed from any indemnity agreements, Monarch refused to do so. *Id.* at ¶¶14-15. Instead, Monarch sought and received two bonds from MBC. *Id.* at ¶¶16-17. Although Holden was not involved with the projects associated with those bonds, he was still listed on the indemnity agreements. *Id.* at ¶¶17.

In April 2022, MBC contacted Holden regarding issues Monarch was having on the bonded construction projects. *Id.* at ¶22. Holden told MBC he was ready, willing, and able to complete any deficiencies in the projects to avoid MBC making payments under the bonds. *Id.* at ¶25. But Holden received no substantive communication from MBC until the summer of 2023, after MBC had paid the obligations under the bond and pursued Monarch for reimbursement. *Id.* at ¶26.

On January 19, 2024, MBC issued a formal demand to Holden regarding his duties under the indemnity agreement. *Id.* at ¶27. Holden responded, stating he would neither indemnify MBC nor post collateral. *See* Dkt. 1, ¶26; Dkt. 1-6. MBC

---

[1] These facts are alleged in Holden's Answer and Counterclaim (Dkt. 9), which the Court accepts as true for purposes of ruling on the Motion to Dismiss.

then initiated this action, asserting claims against Holden for breach of contract and unjust enrichment and seeking specific performance. Dkt. 1.

With his Answer, Holden asserted a counterclaim for an alleged breach of the implied duty of good faith and fair dealing (Dkt. 9), which MBC now seeks to dismiss (Dkt. 18). This Court has reviewed the Motion, the related briefing, and the applicable law. No hearing is necessary. For the following reasons, the Motion is GRANTED.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). The Court accepts the well-pleaded facts as true and views the allegations in the light most favorable to the non-movants. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678 (internal quotation marks omitted).

The *Twombly/Iqbal* pleading standard requires courts take a two-prong approach to evaluating the sufficiency of a complaint. *Id*. at 678–79. The first prong requires the court to identify which allegations "are not entitled to the assumption of

truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id*. at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009).

## ANALYSIS

In his counterclaim, Holden alleges the controlling indemnity agreement includes several discretionary clauses that implicate the duty of good faith and fair dealing. Dkt. 9, ¶31. Holden further contends that in exercising its discretion pursuant to those clauses, MBC was obligated to effectuate the parties' intentions and honor Holden's reasonable expectation that he would participate in the resolution of the bond demand. *Id*. at ¶32. MBC argues that Holden's expectations were not reasonable because the agreement expressly provided for MBC to act in its sole discretion. *See* Dkts. 18, 22. The Court agrees with MBC.

In Colorado, "[e]very contract contains an implied duty of good faith and fair dealing." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1362

(Colo. App. 1994). A claim for breach of the covenant of good faith and fair dealing must generally be connected to a specific contract term that gives one party "discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), *as modified on denial of reh'g* (Jan. 16, 1996).

"Good faith performance of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Occusafe, Inc. v. EG&G Rocky Flats, Inc.*, 54 F.3d 618, 624 (10th Cir. 1995) (cleaned up). In this case, therefore, the Court's inquiry "focuses on whether [MBC's] conduct violated the parties' agreed common purpose or was inconsistent with [Holden's] justified expectations." *Id.* Importantly, "the implied duty of good faith and fair dealing cannot contradict terms or conditions for which a party has bargained, nor can it inject substantive terms into the parties' contract." *Miller v. Bank of New York Mellon*, 2016 COA 95, ¶ 41, 379 P.3d 342, 348 (2016).

In his counterclaim, Holden contends MBC breached the implied duty of good faith and fair dealing when it failed to allow him to participate in the resolution of the demand on the bond or complete the construction project and instead made payment under the bond. *Id.* at ¶¶33-35. But the express terms of the indemnity agreement undermine this argument. Specifically, and as pertinent here, it provides:

> The Company shall have the right, at its option and *in its sole discretion*, to take possession of the work under any and all contracts guaranteed by any such Bond whenever, *in its sole opinion*, such action is desirable or necessary, and *at the expense of the Undersigned* to complete or to

> contract for the completion of the same, or to consent to the reletting or completion thereof by the obligee in any such Bond or to take such other steps as *in the discretion of the Company may be advisable or necessary to secure its release or to secure itself from loss thereunder.* All damage, loss or expense of any nature which the Company may incur in this connection *shall be borne by the Undersigned.*

Dkt. 1-3, p. 2 (emphasis added).

Despite the foregoing language, Holden argues that it is customary practice for principals or contractors to be given an opportunity to resolve the issue prior to the surety's payment to the obligee. Dkt. 21, pp.5-6. But even accepting, *arguendo*, that this is true, it is of no moment in this case because the parties have expressly contracted out of any customary practice. To be sure, as Holden acknowledges in his counterclaim, this clause grants MBC the sole discretionary authority on how to proceed in the event demands are made upon the surety bond. *See* Dkt. 9, ¶31. And the provision is exquisitely clear that MBC's actions can redound to the detriment of the indemnitor, in this case Holden. Dkt. 1-3, p. 2.

Holden's argument to the contrary essentially asserts that MBC acted in bad faith by acting in its sole discretion, which deprived Holden of his expectation that MBC would not do so. Any such expectation by Holden was unreasonable considering the plain language of his agreement with MBC. *See Eur. Motorcars of Littleton, Inc. v. Mercedes-Benz USA, LLC*, No. 17-cv-00051-MEH, 2017 WL 2629133, at *13 (D. Colo. June 19, 2017) (the plaintiff failed to state a claim for breach of good faith and fair dealing where the defendant acted as expressly permitted by the contract).

If the Court were to accept Holden's theory and find that MBC acted in bad faith by failing to acquiesce in Holden's request to participate in the resolution of the dispute, it would require MBC to accept a material change in the terms of the contract—i.e., trading the ability to act in its sole discretion for the inability to act unilaterally. The Court cannot accept this proposition when the contract between the parties is clear and unambiguous on the point. *See Id.*; *see also Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.*, No. 10CV2503 AJB DHB, 2012 WL 5928139, at *7 (S.D. Cal. Nov. 26, 2012) (no breach of the covenant of good faith and fair dealing where the contract gave surety the authority to settle claims against it in its sole discretion and it did so). Rather, because MBC acted pursuant to the express terms of the contract, Holden has failed to plausibly allege a claim for breach of the implied duty of good faith and fair dealing.

*    *    *

For the reasons shared above, Merchants Bonding Company's Motion is GRANTED and Holden's counterclaim is dismissed, with prejudice.

DATED: March 28, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge